IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| ALVIN CORNELIUS MCGILCVERY, | § | |
| | § | |
| Petitioner, | § | |
| | § | |
| v. | § | No. 4:14-CV-721-Y |
| | § | |
| WILLIAM STEPHENS, Director, | § | |
| Texas Department of Criminal | § | |
| Justice, Correctional | § | |
| Institutions Division, | § | |
| | § | |
| Respondent. | § | |

## OPINION AND ORDER

Before the Court is a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 filed by petitioner, Alvin Cornelius McGilvery, a state prisoner, against William Stephens, director of the Texas Department of Criminal Justice, Correctional Institutions Division (TDCJ), Respondent.

After having considered the pleadings and relief sought by Petitioner, the Court has concluded that the petition should be denied.

## I. FACTUAL AND PROCEDURAL HISTORY

In December 2011 Petitioner was indicted in Criminal District Court Number Two of Tarrant County, Texas, Case No. 1255066D, on two counts of sexual assault of a child younger than 17 years of age. (Adm. R., WR-81,240-01, 84-85, ECF No. 7-4.) The indictment also included a repeat-offender paragraph alleging a prior 2004 conviction for sexual assault of a child.  If found guilty and the

repeat-offender allegation found to be true, Petitioner was subject to a mandatory life sentence. Tex. Penal Code Ann. §§ 12.42(c)(2) & 22.011(f) (West 2011 & Supp. 2014).   On May 10, 2013, pursuant to a plea agreement, Petitioner pleaded guilty to count one of the indictment, the state waived count two and the enhancement paragraph, and the trial court sentenced him to twenty years' confinement.   Petitioner did not directly appeal his conviction or sentence. (Pet. 3, ECF No. 1.) Petitioner filed a state habeas application challenging his conviction, and raising the claims presented here, which was denied without written order by the Texas Court of Criminal Appeals on the findings of the trial court. (Admin. R., WR-81,240-01, ECF No. 7-2.) This federal habeas petition followed.

## II. ISSUES

Petitioner raises the following grounds for habeas relief:

(1) and (2) he was convicted on the basis of a guilty plea that was the product of ineffective assistance of trial counsel in violation of his right to counsel and to due process of law;

(3) he is actually innocent of the offense; and

(4) he was convicted on the basis of a guilty plea that was the product of coercion by his trial counsel in violation of his right to a fair trial.

(Pet. 6-18, ECF No. 1.)

## III. RULE 5 STATEMENT

Respondent believes that Petitioner has sufficiently exhausted

2

his state remedies and that the petition is neither barred by limitations nor subject to the successive-petition bar. (Resp.'s Answer 4, ECF No. 8.)

## IV. DISCUSSION

### A. Legal Standard for Granting Habeas-Corpus Relief

A § 2254 habeas petition is governed by the heightened standard of review provided for by the Anti-Terrorism and Effective Death Penalty Act (AEDPA). *See* 28 U.S.C. § 2254. Under the Act, a writ of habeas corpus should be granted only if a state court arrives at a decision that is contrary to or an unreasonable application of clearly established Supreme Court precedent or that is based on an unreasonable determination of the facts in light of the record before the state court. *Harrington v. Richter,* 562 U.S. 86, 100-01 (2011); 28 U.S.C. § 2254(d)(1)-(2). This standard is difficult to meet and "stops [just] short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings." *Harrington*, 131 S. Ct. at 786.

Additionally, the statute requires that federal courts give great deference to a state court's factual findings. *Hill v. Johnson*, 210 F.3d 481, 485 (5th Cir. 2000). Section 2254(e)(1) provides that a determination of a factual issue made by a state court shall be presumed to be correct. The petitioner has the burden of rebutting the presumption of correctness by clear and

convincing evidence. 28 U.S.C. § 2254(e)(1); *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003); *Williams v. Taylor*, 529 U.S. 362, 399 (2000). Typically, when the Texas Court of Criminal Appeals denies relief in a state habeas-corpus application without written opinion, as in this case, it is an adjudication on the merits, which is entitled to the presumption. *Singleton v. Johnson*, 178 F.3d 381, 384 (5th Cir. 1999); *Ex parte Torres*, 943 S.W.2d 469, 472 (Tex. Crim. App. 1997). Under these circumstances, a federal court may assume the state court applied correct standards of federal law to the facts, unless there is evidence that an incorrect standard was applied, and infer fact findings consistent with the state court's disposition. *Townsend v. Sain,* 372 U.S. 293, 314 (1963)[1]; *Catalan v. Cockrell,* 315 F.3d 491, 493 n.3 (5th Cir.2002); *Valdez v. Cockrell,* 274 F.3d 941, 948 n.11 (5th Cir. 2001). With these principles in mind, the Court addresses Petitioner's claims.

**B. Voluntariness of the Plea**

Under grounds (1) and (2), Petitioner claims that his trial counsel was ineffective and his right to due process of law was violated by counsel's failure to request funds to have DNA testing done at Petitioner's request where counsel was aware that Petitioner had the HIV virus and by counsel's failure to use exculpatory evidence--video from the motel video camera that did

---

[1]The standards of *Townsend v. Sain* have been incorporated into 28 U.S.C. § 2254(d). *Harris v. Oliver*, 645 F.2d 327, 330 n.2 (5th Cir. 1981).

not show Petitioner or the complainant being at the motel at any time on the date in question. Under ground (4), Petitioner claims that he requested a jury trial but counsel coerced him into pleading guilty to the state's offer by insisting that he would receive a life sentence if he chose to proceed to trial. (Pet. 6-7, ECF No. 1.)

A guilty plea is knowing, voluntary and intelligent if done with sufficient awareness of the relevant circumstances and likely consequences surrounding the plea. *Brady v. United States*, 397 U.S. 742, 748 (1970). Thus, before a trial court may accept a guilty plea, the court must ensure that the defendant is competent and advised of the consequences of his plea and the various constitutional rights that he is waiving by entering such a plea. *Boykin v. Alabama*, 395 U.S. 238, 243 (1969). If a challenged guilty plea is knowing, voluntary and intelligent, it will be upheld on federal habeas review. *James v. Cain*, 56 F.3d 662, 666 (5th Cir. 1995). When reviewing a record, a court must give a signed, unambiguous plea agreement great evidentiary weight. *United States v. Abreo*, 30 F.3d 29, 32 (5th Cir. 1994). Additionally, although a defendant's attestation of voluntariness at the time of the plea is not an absolute bar to later contrary contentions, it places a heavy burden upon him. *United States v. Diaz*, 733 F.2d 371, 373-74 (5th Cir. 1979). A defendant's solemn declarations in open court are presumed true, and a defendant generally may not recant sworn

testimony made at a plea proceeding. *United States v. Fuller,* 769 F.2d 1095, 1099 (5th Cir. 1985).

In the state habeas proceedings, trial counsel, G. Russell Rowe, responded by affidavit to Petitioner's ineffective-assistance claims, in relevant part, as follows:

> "Ineffective Counsel"
>
> Other than the first sentence where he identifies me, Alvin McGilvery is mistaken in almost every other sentence he writes. Alvin McGilvery may have felt pressured by his conscience, his family or his preacher, but he was never pressured by me at any time, under any circumstances, to plead guilty. I advised him of the evidence that would be used against him, which included eyewitness identification as well as electronic media evidence. I even advised him that because of the evidence against him and because he was convicted for the same offense two times before, that my advice would be to take a plea offer, but I never pressured him in any way to do so. I informed him on several occasions that I would be preparing for his trial unless he told me to stop because he wished to propose a counteroffer to the state's plea offer. I told Alvin McGlivery that unless we struck a deal on a plea bargain with the District Attorney, he could receive a life sentence if he took his case to trial <u>and lost</u>. In my written correspondence to Alvin McGilvery I addressed this particular possibility at least three times, each time specifically including the requisite condition of losing at trial before penalties would incur. I also explained to Alvin McGilvery, before he entered his plea of guilty, that because he was pleading guilty to the offense as part of a plea bargain, the enhancements would be waived by the District Attorney, as part of the agreement, and he would only receive punishment for a second degree felony. Alvin McGilvery told me he wanted to accept the offer. Alvin McGilvery's claim that I "would not state the facts that would set him free" is incorrect. I discussed the evidence he claimed was in his favor, and informed him that it was my duty to present such evidence in his defense if the case went to trial. I informed Alvin McGilvery several times that the district attorney did not believe the 'evidence' he claimed was in his favor

6

was significant enough to change their mind about prosecuting him, and that he would have to go to trial to present his evidence to see if it would give the jury reasonable doubt.

Alvin McGilvery did ask me if I would fight for him and I told him that it was my job to do exactly that. Alvin McGilvery asked me if I believed his story and I said that I did not, but that I was not required to believe him in order to do my job and competently represent him. Alvin McGilvery wanted to get a polygraph test done, but I told him that the results of the test were inadmissible in court, and that the results would not deter the district attorney from prosecuting him. I never made any statements about what the results of the polygraph would be, or whether or not anyone administering the test would "fail" anyone taking the test. Alvin McGilvery had a chance to go to trial but he chose instead to plead guilty, and asked me to obtain another plea offer from the District Attorney. Incidentally, before his plea date, Alvin McGilvery was informed by me as well as by another attorney, Alex Kim, of his constitutional rights, and we discussed the effects of waiving those rights in order to proceed with a plea. Alvin McGilvery stated that he understood those rights and wanted to proceed with the plea.

"Motel<renting>, my I.D. and video footage"

I explained to Alvin McGilvery that the lack of evidence proving he rented a motel room for the purpose of having sex with the victim was something that could be presented in trial. I explained to Alvin McGilvery that because there was a delay of several weeks from the time the alleged assault took place to the time the victim reported it, that there would have been no reason for the motel manager to have kept the video footage taken during the time the assault took place. I also discussed with Alvin McGilvery that my investigator did learn that either the video recorder was not working or that the tape had been recorded over due to the length of time between the alleged incident and the time the tape was requested. I also explained to Alvin McGilvery that any reasonable prosecutor could explain, or even the jury infer by itself, that anyone with a false ID could check into the hotel and therefore no name could be shown to prove or disprove that Alvin McGilvery was there.

7

"DNA-HIV"

I discussed this issue with Alvin McGilvery during a visit to jail. I explained to Alvin McGilvery that just because he had HIV did not mean that the victim would necessarily contract the same disease. I never assured Alvin McGilvery that he would get life just by going to trial. I told him that if he wanted to get up in front of a jury to tell them he didn't do the crime he was accused of, that the prosecutor would be able to question him about his prior criminal history, including his two prior felony convictions for sexual assault of a child. I told him that it was my opinion that there was a high likelihood that because of the evidence against him and because of his prior criminal history he would be convicted if he went to trial, and that if he were convicted of the offense and enhancements he was charged with, there was no sentencing option other than a life sentence.

SUPPLEMENTAL INFORMATION

It should be noted that in talking with Alvin McGilvery about his case, he was reluctant to discuss anything with me, claiming that his previous attorneys had set him up for the previous convictions. Of interest is that Alvin McGlivery's previous attorney in this case, Glynnis McGinty, had arranged for a plea bargain for 20 years and that after agreeing to the plea bargain, Alvin McGilvery chose not to show up for the court setting. Ms. McGinty then withdrew from representing Alvin McGilvery.

During a later meeting with Alvin McGilvery in the jail in which I used tactics to try to get Alvin McGilvery to talk to me, I told Alvin McGilvery that I knew why he was mad because his previous convictions were only a few years each, and I said that "a hoochie-mama just isn't worth 20 years" to which he agreed and stated that the victim was a hoochie-mama, and that she was willing, and that "20 years is unfair".

During the course of my representation of Alvin McGilvery, I arranged to meet and/or talk with Alvin McGilvery's family members, (his mother, his father, his sister, and several uncles) and asked them to consult with him either by phone or by visiting him in jail, about what he wanted to do. Without exception, every family member communicated back to me that Alvin

McGilvery wanted me to see about getting another offer for 20 to 25 years from the District Attorney.

In addition to the several conversations I had with Alvin McGilvery in person, I sent a letter to him on May 1, 2013, . . . which outlined clearly the state's case against him, his defense strategies, the penalties he was facing, a summary of my advice about going to trial, and ultimately a request for a written acknowledgment of what course he intended to pursue. Alvin McGilvery never responded to the letter in writing, but I believe it was after the receipt of this letter that Alvin McGilvery asked me to seek another plea offer from the district attorney. I went to visit him at the jail and we discussed how he would have to plead guilty to the offense in order to receive the plea offer, and I told him that unless he told me he was guilty I couldn't ethically proceed with setting up a plea offer. Alvin McGilvery then told me he was guilty and wanted the offer instead of taking the case to trial.

(Admin. R., WR-81,240-01, 51-57, ECF No. 7-4.)

Based on the documentary record, his own recollection of the plea proceedings, and counsel's affidavit, the state habeas judge found that counsel advised Petitioner to plead guilty in light of the evidence against him and the risk for a mandatory life sentence; that counsel's advice was the result of reasonable trial strategy; that counsel did not pressure Petitioner into pleading guilty; that Petitioner was properly admonished regarding his rights and the effect of waiving those rights; and that Petitioner wanted to proceed to a plea. The court further found that Petitioner acknowledged by his signature that he understood the plea admonitions and the consequences of his plea; that his plea was knowingly, freely, and voluntarily entered; that no one had threatened, coerced, forced, persuaded or promised him anything to

9

plead guilty, that he was "totally satisfied" with counsel's representation; and that counsel provided "fully effective and competent representation." (*Id.* at 63-65, 90.) Based on its findings, the court concluded that Petitioner had failed to prove counsel pressured him to plead guilty, that counsel properly advised Petitioner that he would receive a life sentence if found guilty, that Petitioner had been properly admonished, and that Petitioner's guilty plea was freely, knowingly, and voluntarily made. (*Id.* at 66-69.) In turn, the Texas Court of Criminal Appeals denied Petitioner's claims on the trial court's findings.

Absent clear and convincing evidence in rebuttal, this Court must defer to the state court's factual determinations. Applying the appropriate deference, Petitioner's claim of coercion under ground (4) after the fact, is insufficient to rebut the presumption that he received effective assistance of counsel and the presumption of regularity of the state-court records. *See Webster v. Estelle*, 505 F.2d 926, 929-30 (5th Cir. 1974) (holding state court records "are entitled to a presumption of regularity"); *Babb v. Johnson*, 61 F. Supp. 2d 604, 607 (S.D. Tex. 1999) (same). Counsel's obligation is to inform a criminal defendant of the advantages and disadvantages of a plea agreement and the attendant statutory and constitutional rights that a guilty plea would waive. *Libretti v. United States*, 516 U.S. 29, 50-51 (1995). Often a criminal defendant, even if he is unwilling or unable to admit his

10

guilt, will agree to plead guilty to an offense, having been so informed by counsel, in order to avoid a potentially harsher sentence by a judge or jury. Such a decision on the part of a defendant does not render counsel's representation deficient or a plea involuntary. *See North Carolina v. Alford*, 400 U.S. 25, 37 (1970); *Brady*, 397 U.S. at 749-50.

By entering a knowing, intelligent and voluntary guilty plea, a defendant waives all nonjurisdictional defects in the proceedings preceding the plea. This includes all claims of ineffective assistance of counsel that do not attack the voluntariness of the guilty plea. *Smith*, 711 F.2d at 682; *Bradbury v. Wainwright*, 658 F.2d 1083, 1087 (5th Cir. 1981). Thus, in light of Petitioner's knowing, voluntary, and intelligent guilty plea, grounds one and two involving alleged acts or omissions by counsel prior to the plea are waived. *Florida v. Nixon,* 543 U.S. 175, 187 (2004); *United States v. Broce,* 488 U.S. 563, 573–74 (1989); *Tollett v. Henderson,* 411 U.S. 258, 267 (1973).

11

### 4. Actual Innocence

Under Petitioner's ground (3), he claims that he is actually innocent of the offense because TDCJ has confirmed that he is, in fact, HIV positive and, had he had sex with the 16-year-old victim, she too would be infected. (Pet. 7, ECF No. 1.) To establish actual innocence, "the petitioner must support his allegations with new, reliable evidence that was not presented at trial and show that it was 'more likely than not that no reasonable juror would have convicted him in the light of the new evidence.'" *Fairman v. Anderson,* 188 F.3d 635, 664 (5th Cir. 1999) (quoting *Schlup v. Delo,* 513 U.S. 298, 327 (1995)); *accord Finley v. Johnson,* 243 F.3d 215, 221 (5th Cir. 2001). Petitioner provides no proof of his assertion. Moreover, the possibility, if not the fact, that he was HIV positive was known to Petitioner at the time of his plea. Petitioner has offered no new, reliable evidence sufficient to refute the validity of his guilty plea.

For the reasons discussed, the Court DENIES Petitioner's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 and DENIES a certificate of appealability.

SIGNED March 1, 2016.

*Terry R. Means*
TERRY R. MEANS
UNITED STATES DISTRICT JUDGE